```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
                                                       07 Civ. 0135 (WCC)
J.J.J. PROPERTIES INC.,                  :
                                                          ECF CASE
                Plaintiff,               :

        - against -                      :               OPINION
                                                        AND ORDER
THE TRAVELERS INDEMNITY COMPANY,         :

                Defendant.               :
- - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

                              CAPUDER, FAZIO, GIACOIA LLP
                              **Attorneys for Plaintiff**
                              90 Broad Street
                              New York, New York 10004

JOSEPH D. GIACOIA, ESQ.

       Of Counsel

                              LAZARE POTTER GIACOVAS & KRANJAC LLP
                              **Attorneys for Defendant**
                              950 Third Avenue
                              New York, New York 10022

STEPHEN M. LAZARE, ESQ.
PATRICIA DEE BILKA, ESQ.

       Of Counsel

**Copies E-Mailed to Counsel of Record**

**Conner, Senior D.J.:**

Plaintiff J.J.J. Properties, Inc. ("JJJ") brings this action for monetary damages and a declaratory judgment against defendant Travelers Indemnity Company ("Travelers"). Plaintiff purchased a commercial general liability policy from defendant. Plaintiff claims that defendant breached the terms of their agreement by refusing to defend and indemnify plaintiff against liability for an accident that occurred on plaintiff's property. Defendant now moves for summary judgment on the ground that plaintiff's untimely notice of claim relieves defendant of its obligation to provide coverage. For all of the following reasons, the motion is denied.

**BACKGROUND**

Unless otherwise indicated, the following facts are undisputed.

JJJ was incorporated in 1987 by Joseph A. Simonetti ("Simonetti"); his brother, Gerard Simonetti and their father, Joseph C. Simonetti. (Def. R. 56.1 Stmt. ¶ 3.) Simonetti, his brother and his father each owned one third of the outstanding shares of JJJ until the latter's death in 2005, at which time his shares passed to his wife, Adeline Simonetti. (Simonetti Decl. ¶¶ 3, 15.) JJJ's sole business is the ownership of certain real property located at 307 South Main Street, Nyack, New York (the "Premises"). (Def. R. 56.1 Stmt. ¶ 5; Dee Bilka Decl., Ex. I at 20-21.)

JJJ's sole tenant at the Premises is American Minutemen Sewer and Drain Service, Inc. ("American Minutemen"), another business incorporated by the Simonetti family. (Def. R. 56.1 Stmt. ¶ 8.) American Minutemen is in the business of cleaning sewers and drains for commercial, residential and municipal customers. (*Id.* ¶ 9.) In 1992, Simonetti purchased all of his brother's and father's stock in American Minutemen and became the company's sole shareholder. (*Id.* ¶ 10.)

1

Simonetti ran American Minutemen's day-to-day operations from 1977 to 2002, at which time he promoted Scott Hernandez, an American Minutemen employee, to manager. (Simonetti Decl. ¶¶ 16-17.)

Travelers issued general commercial liability policy number I-680-145L963A-IND-03 (the "Policy") to JJJ, effective from June 23, 2003 to June 23, 2004. (Def. R. 56.1 Stmt. ¶ 1.) The Policy provides in relevant part:

> Duties In The Event Of Occurrence, Offense, Claim Or Suit
>
> a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
>     (1) How, when and where the "occurrence" took place;
>
>     (2) The names and addresses of any injured persons and witnesses; and
>
>     (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
> b.  If a claim is made or "suit" is brought against any insured, you must:
>
>     (1) Immediately record the specifics of the claim or "suit" and the date received; and
>
>     (2) Notify us as soon as practicable.

(Dee Bilka Decl., Ex. A-1.)

At the time relevant to this action, Walter Louissaint was an employee of American Minutemen. (Def. R. 56.1 Stmt. ¶ 13.) Louissaint claims to have been injured on the Premises on December 6, 2003 when he slipped and fell while repairing a machine. (*Id.*) Louissaint informed Hernandez of this injury in or around April 2004, and Hernandez informed Simonetti that same month. (*Id.* ¶¶ 14-15.) Hernandez doubted Louissaint's veracity because of the amount of time that

had passed since the alleged incident, and because he had reason to believe that the injury was a pre-existing condition that Louissaint had sustained playing soccer. (Simonetti Decl. ¶ 27; Dee Bilka Decl., Ex. I at 64-65.) Nevertheless, Hernandez told Simonetti about Louissaint's injury, and Simonetti instructed Hernandez to file a workers' compensation claim. (Simonetti Decl. ¶ 28.) According to Simonetti, Hernandez did not tell him where Louissaint's injury occurred, but only that Louissaint was injured "while he was working." (Dee Bilka Decl., Ex. I at 64-65; Simonetti Decl. ¶ 29.) The workers' compensation claim form, filled out in part by Hernandez and in part by Linda Margillo, another American Minutemen employee, describes the circumstances of Louissaint's injury as follows: "Allegedly fixing a machine (jet) in yard. Slipped on ice, allegedly." (Dee Bilka Decl., Exs. J at 19-20, L.)

On September 12, 2006, JJJ received a letter from Richard P. Neimark, Esq., counsel to Louissaint, stating that Louissaint would be pursuing a personal injury claim against JJJ. (Dee Bilka Decl., Ex. H.) Simonetti then called Travelers on September 14 to report Louissaint's injury. (Def. R. 56.1 Stmt. ¶ 25.) This was the first notice Travelers received of the claim. (*Id.* ¶ 26.) By letter dated October 3, 2006, Travelers disclaimed coverage on the ground that JJJ breached the terms of the insurance contract by failing to notify it of the incident as soon as practicable. (Dee Bilka Decl., Ex. D.) Louissaint commenced his personal injury action against JJJ on or about October 25, 2006. (Def. R. 56.1 Stmt. ¶ 32.) JJJ then forwarded the summons and complaint to its insurance broker, who forwarded them to Travelers, which reiterated its disclaimer of coverage. (*Id.* ¶¶ 33-34.) The present action then followed.

## DISCUSSION

**I.** **Standard of Review**

Summary judgment is appropriate when there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). The Court must resolve all ambiguity in favor of the non-moving party and draw every permissible factual inference in that party's favor. *See Anderson*, 477 U.S. at 255. The burden is on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). When the movant has met that burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting FED. R. CIV. P 56(e)) (citations omitted) (emphasis in original).

**II.** **The Requirement of Timely Notice**

Under New York law, which the parties agree governs this dispute, compliance with an insurance policy's notice requirements is a material condition precedent to coverage. *See U.S. Underwriters Ins. Co. v. Kum Gang, Inc.*, 443 F. Supp. 2d 348, 360 (E.D.N.Y. 2006); *Witriol v. Travelers Ins. Group*, 674 N.Y.S.2d 429, 430 (App. Div. 1998). Absent a valid excuse, failure to

comply with those requirements vitiates coverage under the policy. *See U.S. Underwriters*, 443 F. Supp. 2d at 360; *Bauer v. Whispering Hills Assocs.*, 620 N.Y.S.2d 147, 149 (App. Div. 1994). Therefore, when the policy requires that the insurer be notified of an occurrence as soon as practicable and the notice to the insurer is untimely, the insurer may disclaim coverage, regardless of whether it was prejudiced by the delay. *See Sec. Mut. Ins. Co. v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 441 (1972); *Smalls v. Reliable Auto Serv., Inc.*, 612 N.Y.S.2d 674, 676 (App. Div. 1994). "The test for determining whether the notice provision has been triggered is whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim." *Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141, 143 (2d Cir. 1995); *see also Stone & Webster Mgmt. Consultants, Inc. v. Travelers Indem. Co.*, 1996 U.S. Dist. LEXIS 4852, at *53 (S.D.N.Y. Apr. 16, 1996).

Untimely notice may be excused in certain circumstances, however, such as where the insured was not aware of the occurrence or reasonably believed that it did not face liability. *See Sec. Mut. Ins.*, 31 N.Y.2d at 441. But the insured must "exercise reasonable care and diligence to keep himself informed of accidents out of which claims for damages may arise." *Id.* The insured bears the burden of establishing a reasonable excuse for untimely notice. *See Bauer*, 620 N.Y.S.2d at 149.

Travelers has disclaimed coverage on the basis of late notice. Travelers argues that because JJJ did not inform it of Louissaint's injury until almost two and a half years after Simonetti learned of it, the notice was untimely as a matter of law. (*See* Def. Mem. Supp. Summ. J. at 8.) Travelers cites several cases in which the New York Supreme Court, Appellate Division has held delays shorter than the one involved here to be unreasonable as a matter of law. *See Am. Mfrs. Mut. Ins. Co. v. CMA Enters., Ltd.*, 667 N.Y.S.2d 724, 724 (App. Div. 1998) (delay of nine months after

commencement of underlying action and two years after occurrence); *Holmes v. Morgan Guar. & Trust Co.*, 636 N.Y.S.2d 778, 779-80 (App. Div. 1996) (ten months); *Platsky v. Gov't Employees Ins. Co*, 581 N.Y.S.2d 235, 236 (App. Div. 1992) (ten months).

Travelers' argument is based on the premise that Simonetti's knowledge of Louissant's injury can be imputed to JJJ. JJJ denies this. According to JJJ, Simonetti was merely a shareholder of JJJ and had no role in its management or operations. (*See* Pl. Mem. Opp. Summ. J. at 9.) Travelers has responded by submitting evidence indicating that Simonetti was the president of JJJ during the time period in question. (*See* Conway Reply Decl.) This creates a question of fact about Simonetti's relationship to JJJ that precludes summary judgment.

As a general matter, knowledge that an agent acquires in the scope of his agency is imputed to the principal, meaning that the latter is bound by that information even if he never actually received it. *See N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 122 (2d Cir. 2001); *Center v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 784, (1985). Thus, the knowledge of an officer, director or sole shareholder can be imputed to a corporation. *See Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 255 (2d Cir. 1995); *In re Parmalat*, 383 F. Supp. 2d 587, 597 (S.D.N.Y. 2005); *Blau-Par Corp. v. Reliance Chem. Corp.*, 565 N.Y.S.2d 910, 912 (App. Div. 1991).

Simonetti states that his father, Joseph C. Simonetti, ran JJJ from the founding of the company until shortly before his death in 2005. (Simonetti Decl. ¶ 6.) Simonetti became the president thereafter. (*See id.* ¶ 1.) According to Simonetti, his father "was generally in charge of all functions for [JJJ], including accounting and building repair. He was the president and chairman of the board." (*Id.* ¶ 6.) Simonetti does not recall holding any office or position with JJJ until after

6

his father's death. (*Id.*) And neither Simonetti nor Hernandez informed Simonetti's father of Louissaint's injury. (*See* Simonetti Decl. ¶ 31; Dee Bilka Decl., Ex. J at 23-24.)

Travelers has submitted a copy of JJJ's Business Corporation Biennial Statements, which were filed with the New York State Department of State, Division of Corporations. (*See* Conway Reply Decl.) The Biennial Statement dated April 25, 2003, lists "Joseph A. Simonetti" as president and appears to have been signed by Simonetti. (*See id.*, Ex. A.) In response, JJJ filed a sur-reply declaration by Simonetti in which he reiterates his position that his father, and not he, was "the head of JJJ" during the time period in question. (*See* Simonetti Sur-Reply Decl. ¶ 2.) This is consistent with Simonetti's first declaration, in which he states that his father ran JJJ and "was generally in charge of all functions for [JJJ]" during the time period at issue.[1] (*See* Simonetti Decl. ¶ 6.) In his sur-reply declaration, Simonetti states that he "may have signed" the Biennial Statement listing him as president "at the accountant's direction and in [his] father's absence," but did not intend to "usurp [his] father's position." (Simonetti Sur-Reply Decl. ¶ 6.)

Simonetti's relationship to JJJ during the relevant time period is therefore unclear on the record before us. If, as JJJ argues, Simonetti had no involvement in the company beyond his ownership of one third of its shares, then his knowledge of Louissaint's injury would not be imputable to JJJ. *See Am. Cyanamid Co. v. Wilson & Toomer Fertilizer Co.*, 51 F.2d 665, 670 (5th

---

[1] JJJ asks the Court to accept its sur-reply submission on the ground that Travelers raised the issue of Simonetti's alleged status as president of JJJ for the first time in its reply papers. Travelers notes, correctly, that it raised this point in response to JJJ's argument in its opposition papers that Simonetti was no more than a shareholder of JJJ. Thus, while JJJ raised the issue first in its opposition, Travelers' reply papers contained new factual information (in the form of documentary evidence) that had not yet been before the Court. We therefore find that accepting JJJ's sur-reply declaration will not unfairly prejudice Travelers, and will promote the interests of justice by allowing the Court to decide the motion on a more fully developed factual record.

Cir. 1931). But if, as Travelers urges, Simonetti was the president of JJJ at the time he learned of Louissaint's injury, then his knowledge would be imputed to JJJ and the notice to Travelers would almost certainly be untimely, unless JJJ can establish some other excuse for the delay.[2] *See, e.g., Baker*, 72 F.3d at 255. There is thus a disputed issue of material fact, so the motion for summary judgment must be denied. *See Anderson*, 477 U.S. at 247-50.

## CONCLUSION

For all of the foregoing reasons, defendant's motion for summary judgment is denied.

SO ORDERED.

Dated: White Plains, New York
July 7, 2008

_____
Sr. United States District Judge

---

[2] JJJ argues in the alternative that, even if Simonetti's knowledge is imputed to it, its untimely notice should be excused because it reasonably believed that it would not face liability for Louissaint's injury. (*See* Pl. Mem. Opp. Summ. J. at 9); *see also Sec. Mut. Ins.*, 31 N.Y.2d at 441. Having determined that there is a question of fact as to whether Simonetti's knowledge can be imputed to JJJ, we do not reach this alternative argument.

8